**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| ROBERT A. DOANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| ASHAR SYED, in his Individual ) | **DEMAND FOR JURY TRIAL** |
| Capacity and in his Capacity as Officer ) | |
| of Tele Circuit Network Corporation, ) | CIVIL #: _____ |
| ) | |
| JOHN DOE(s) and/or JANE DOE(s), ) | |
| in their Individual Capacities and/or ) | |
| in their Capacities as Officers or ) | |
| Employees of Tele Circuit Network ) | |
| Corporation, ) | |
| ) | |
| TELE CIRCUIT NETWORK ) | |
| CORPORATION, ) | |
| ) | |
| JOHN and/or JANE DOE(s) 1-100. ) | |
| ) | |
| XYZ Companies 1-100. ) | |
| ) | |
| ) | |
| Defendants. ) | |

_____)

**INTRODUCTION**

Robert A. Doane ("Doane") brings this action against the above-named defendants (collectively the "Defendants"), seeking damages for claims arising out of the Defendants' illegal use or "spoofing" of Doane's name and cellphone number while engaging in an unlawful telemarketing campaign. Specifically, the Defendants, using automatic and predictive telephone dialer systems, called thousands of persons, often repeatedly and while such persons were on the FTC's do-not-call registry, and caused Doane's name and cellphone number to appear on the call recipients' caller identification, as part of their attempts to convince such persons to change their long distance phone

carrier. As a consequence of the Defendants' outrageous conduct, those persons receiving the Defendants' calls believed Doane had called them in a manner that violates numerous state and federal telemarketing laws. As a further consequence, Doane received hundreds of calls from those believing Doane had called them, and over a hundred voicemails from those reporting that they were on the do-not-call registry.  Doane likewise received calls from these individuals threating to report Doane to the authorities or to sue Doane for the repeated calls, and accusing Doane of attempting to scam them. Some recipients of Defendants' spoofed calls went so far as to threaten Doane with physical harm. As a proximate cause, Doane has suffered, and is expected to continue suffering, loss of reputation, defamation, invasion of privacy and intrusion upon his seclusion, trespass and nuisance, severe emotional distress with physical manifestations and is presently under the perpetual threat of being sued.

As the Defendants' conduct was in the course of trade and commerce, it also violates the Massachusetts Consumer Protection Act, entitling Doane to further damages, i.e., not less than double and not more than treble his actual damages as to each defendant, along with his court costs and attorney fees. Aside from actual and punitive damages, Doane seeks a declaration by this Court that he is not responsible for the Defendants' calls, and/or that this Court require, pursuant to G.L. c. 243, § 1, that Defendants abate the ongoing nuisance that the Defendants created by sending notice to each of the persons called that they were wrongly spoofed, and that the Defendants, rather than Doane, were and are responsible for the calls.

## THE PARTIES

1.    Plaintiff, Robert A. Doane ("Plaintiff" or "Doane"), is an individual residing at 21 New
 Lane, West Tisbury, MA 02568.

2.    Defendant, Ashar Syed ("Syed"), is an individual residing in Georgia.  Syed is and has been at all times relevant the Chief Executive Officer of Tele Circuit Network Corporation. Syed

is individually named in this Complaint because he as an officer of Defendant Tele Circuit Network Corporation acted and directed Tele Circuit Network Corporation and accordingly may be held directly liable for damages arising from Plaintiff's claims under the Massachusetts Consumer Protection Act, G.L. c. 93A, as damages arising thereunder do not require piercing of the corporate veil.

3.      Defendant, Tele Circuit Network Corporation ("TCNC"), is a domestic profit Corporation organized under the laws of the State of Georgia with a principle office address of 1815 Satellite Blvd, Suite 504, Duluth, GA, 30097. The registered agent is RTC-CIS Inc., with a physical address of 3075 Breckinridge Blvd, Suite 425, Gwinnett, Duluth, GA 30096.

4.      Defendants, John and/or Jane Doe(s) 1-100 are unknown individuals residing at unknown addresses. These Defendants are named in this Complaint because upon information and belief these unknown defendants exist and engaged in a conspiracy with the known defendants and are jointly and severally liable for the conduct alleged herein. Upon identifying these unknown individuals, the Plaintiff will seek to amend this complaint accordingly.

5.      Defendants, XYZ Companies 1-100 are unknown companies registered at unknown places. These Defendants are named in this Complaint because upon information and belief these unknown companies exist and engaged in a conspiracy with the known defendants and are jointly and severally liable for the conduct alleged herein. Upon identifying these unknown companies, the Plaintiff will seek to amend this complaint accordingly.

6.      Whenever this Complaint references any act of any defendant, such allegation shall be deemed to mean said defendant was acting (a) as a principal, (b) under express or implied agency, and/or (c) with actual or ostensible authority to perform the acts alleged.

## JURISDICTION AND VENUE

7.    This Court has subject matter over these claims pursuant to 28 U.S.C. §§1331 and 1332 and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.  See *Mims v. Arrow Financial Services, LLC*., 132 S. Ct. 740 (2012).  Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the Plaintiff is a resident of a different state from each defendant and because the value of the matter in controversy exceeds $75,000.

8.    Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claim is based occurred in the District of Massachusetts and Doane suffered and continues to suffer damages in this District.

## FACTS

9.    The allegations of paragraphs 1 through 8 of this Complaint are realleged and incorporated by reference.

10.    At all times relevant, Doane owned and maintained a cellphone with the number of 781-245-6577, which – due to his interest in keeping his privacy and to not be interrupted – has at all times relevant been registered to a "do not call list" maintained by the Federal Trade Commission. A true copy of a printout confirming said registration is attached herewith as **"Exhibit 1"** and incorporated herein by reference.

11.    Doane grew up with the phone number 781-245-6577, all his family and friends associate Doane with that number, and Doane's elderly and frail parents rely on it to reach Doane.

12.    At all times relevant, the Defendant TCNC, as reported in its Articles of Incorporation, was organized to, among other things, "carry on a general business in telecommunication, local, long distance, cellular service, software & hardware and networking solutions … in state of Georgia and/or other states."

13.     In December 1998, the Federal Communications Commission ("FCC") released the "Section 258 order" in which it adopted rules to implement Section 258 of the Communications Act of 1934, as amended by the Telecommunications Act of 1996. Section 258 prohibits the practice of "slamming", the submission or execution of an unauthorized change in a subscriber's selection of a provider of telephone exchange service or telephone toll service.

14.     On September 14, 2010, the FCC received a complaint in which the complainant alleged their telecommunications service provider was changed to Defendant TCNC without authorization. The FCC found in that instance that Defendant TCNC violated the FCC's carrier change rules. A true copy of the FCC order is attached herewith as **"Exhibit 2"** and incorporated herein by reference.

15.     On March 24, 2011, the FCC received another complaint in which the complainant alleged their telecommunications service provider was changed to Defendant TCNC without authorization. The FCC found in that instance that Defendant TCNC violated the FCC's carrier change rules. A true copy of the FCC order is attached herewith as **"Exhibit 3"** and incorporated herein by reference.

16.     Numerous persons have recently complained on the Internet that Defendant TCNC has changed their telecommunications provider deceptively or without permission. Some of these may be found on the Better Business Bureau website, which has provided Tele Circuit an "F" rating. A true copy of some of these complaints, along with the BBB rating, are attached herewith as **"Exhibit 4"** and incorporated herein by reference.

17.     Defendant TCNC engages in telemarketing campaigns which target consumers across the United States. A true copy of Defendant TCNC's privacy policy website pages referencing telemarketing is attached herewith as **"Exhibit 5"** and incorporated herein by reference.

18.     Defendant TCNC also contracts other agents to engage in telemarketing on Defendant TCNC's behalf. A true copy of TCNC advertisement seeking telemarketers in Pakistan is attached herewith as **"Exhibit 6"** and incorporated herein by reference.

19.     On April 26, 2017, at about 6:36 PM, Doane received a call on his Cellphone from 251-867-6185. The party claimed to have received a call from Doane's Cellphone. In fact, Doane never made a call to that number.

20.     About a half hour later, at 7:17 PM, Doane received a call on his Cellphone from 713-670-9730 from another party wrongly accusing him of having called. In fact, Doane never made a call to that number.

21.     That evening, Doane began receiving an influx of calls from various different persons from several different states all alleging they received calls from Doane. In fact, Doane made no such calls.

22.     Doane became extremely concerned and distressed of the circumstances and was unable to sleep that night.

23.     The next morning, April 27, 2017, Doane's phone became inundated with calls from people claiming Doane was calling them. The callers reported that their caller identifications displayed "Doane Robert 781-245-6577." Doane again attempted to explain to these persons that he was not making the calls.

24.     Over the course of the day, Doane attempted to answer as many calls as he could to explain he was not making the calls and that Doane's number and name that was appearing on their caller identifications were false. Doane also requested the assistance of several understanding persons to get information from those that were calling them – while causing Doane's name and number to falsely appear on their caller identifications – and provide that information to him.

25.     Doane requested one caller (MaShell Davis Kirkland) text him a photo showing the caller identification information that was fraudulently displayed on their phone. A true copy of a screenshot provided to Doane from caller 931-232-6485 is attached herewith as **"Exhibit 7"** and incorporated herein by reference.

26.     The calls continued to get worse in frequency. Doane was receiving calls while he was on the phone explaining to callers he had not made the calls. Doane could not keep up with the influx of calls in an attempt to explain he was not in fact calling.

27.     Many callers were angry and were threatening to sue Doane for harassment, report him to the authorities, i.e., the police and the FBI, and in some instances Doane was advised that he had been so reported. A true copy of these automated voicemail transcripts containing these statements are attached herewith as **"Exhibit 8"** and incorporated herein by reference.

28.     Doane's voicemail quickly filled to capacity, Doane was unable to keep up with the calls, and Doane's phone software began behaving erratically where the voicemail recordings became garbled and inaudible such that Doane was not able to distinguish between callers that would need to be addressed to prevent adverse consequence and those that may not.

29.     Doane, on the evening of April 27, 2017, reported the illegal use of his name and number to the Wakefield Police Department.

30.     On Friday, April 28, 2017, Doane was forced to silence his phone. It was clear to Doane that his efforts to explain to every caller that he was not in fact responsible for the calls was unmanageable, if not impossible.

31.     As Doane reviewed some of his voicemails, he began discovering information from several of those callers who Doane talked with asking for assistance. According to these reports, the agent callers had foreign accents and were calling senior citizens on behalf of "Tele Circuit" attempting to sell products and or services. Indeed, this is consistent with Internet posted reports

by others. A true copy of a one such report is attached herewith as **"Exhibit 9"** and incorporated herein by reference.

32.    On April 27, 2017, 4:33 PM, caller 931-759-7274 left Doane a voicemail message stating a second call was received fraudulently showing Doane's name and number from an agent who identified himself as "Sam Cash" from "Tele Circuit." After caller 931-759-7274 expressed interest the agent provided a Tele Circuit Call back number of 887-835-3247. That number was identified as a legitimate Tele Circuit number. A true copy of a transcript of that voicemail message is attached herewith as **"Exhibit 10"** and incorporated herein by reference.

33.    On April 28, 2017, at 2:59 PM, caller 423-733-4267 left a voicemail message stating that another call was received fraudulently showing Doane's name and number and the agent claimed to be calling senior citizens to solicit sales of Tele Circuit services, i.e., "reduced phone services from AT&T for $45.00 per month." A true copy of the transcript of that call is attached herewith as **"Exhibit 11"** and incorporated herein by reference.

34.    On April 28, 2017, Doane received a call from 352-463-2454 leaving a voice message indicating she had received repeated calls and that she reported Doane to the Trenton, FL police department. Doane was compelled to call that police department to report he did not in fact make the calls.  (Operator 205).

35.    Since Doane installed TrapCall on the late afternoon of April 27, 2017, over 130 voice mail messages from callers believing Doane had called them were received on Doane's Cellphone Number (As of 4:00, April 29, 2017). A true copy of TrapCall's log is attached herewith as **"Exhibit 12"** and incorporated herein by reference.

36.    TCNC engaged in illegal telemarketing using Doane's personal identifying information, i.e., the "spoofing" of Doane's name and telephone number, in furtherance of an attempt to change the call recipients long distance carrier and to have it appear that Doane was responsible.

37.    Upon information and belief, TCNC, using Doane's personal identifying information, collected information from call recipients for the purpose of changing call recipients long distance carrier without their consent and thus in violation of the Federal Communication Commission rules, 47 C.F.R. §§ 64.1100 – 64.1190.

38.    On May 8, 2017. Doane sent Defendant TCNC's Chief Executive Officer, Defendant Syed, and other officers of Defendant TCNC, a 30-day G.L. c. 93A demand letter, alleging these defendants, by using Doane's name and telephone number, committed identify fraud in violation of the Massachusetts Identify Fraud statute, and that such conduct was defamatory, caused Doane the invasion of his privacy and intrusion upon his seclusion, trespass, nuisance, and other present and future harms of such nature that Doane suffered severe emotional distress, and that the conduct of these defendants violated the Massachusetts Consumer Protection Act, among other things. Doane made specific demands for information, including the name of its agent telemarketer, assuming TCNC was not directly responsible, so that Doane could address the ongoing situation. A true copy of Doane's demand letter is attached herewith as **"Exhibit 13"** and incorporated herein by reference.

39.    Within minutes, Defendant Syed called Doane and threatened him. In response, Doane confirmed the conversation in a second email to Syed, which was forwarded to Doane's counsel, who was awaiting to be retained in the event Doane did not receive a favorable response to his immediate demands. A true copy of Doane's email is attached herewith as **"Exhibit 14"** and incorporated herein by reference.

40.    Defendant Syed responded further to Doane's second email. A true copy of Syed's email is attached herewith as **"Exhibit 15"** and incorporated herein by reference.

41.    On Mother's Day, May 14, 2017, Doane received a call from an irate Texas man accusing Doane of having made several calls to his mother saying inappropriate things. The man

suggested he would sue Doane and insinuated he would come to Massachusetts and inflict physical harm.

42.     On May 15, 2017, Doane's counsel sent another letter demanding they respond providing the agent telemarketer's information so Doane's ongoing harms could be addressed. The letter also stated in part, "[i]f this information is not provided, Mr. Doane will consider it an admission by [TCNC] that it is *directly* responsible for the aforementioned illegal spoofing." A true copy of counsel's letter is attached herewith as **"Exhibit 16"** and incorporated herein by reference.

43.     Defendant Syed responded to counsel's letter refusing to provide the information and encouraging Doane to proceed with a lawsuit, which Defendant Syed stated would be met with a counter suit. A true copy of Syed's response is attached herewith as **"Exhibit 17"** and incorporated herein by reference.

44.     As a proximate cause of Defendants' conduct, Doane has been defamed and threatened, and is continuously threatened, by the possibility of criminal prosecution or civil suits against him by any of the thousands of persons the Defendants called wrongly using Doane's personal identifying information. As a further proximate cause of Defendants' conduct, Doane has suffered, and continues to suffer, severe emotional distress with physical manifestations. Doane's damages exceed $75,000.00.

**COUNT I**
**Violations of the Telephone Consumer Protection Act, 47 U.S.C.A. § 227, et seq., and the Massachusetts Identify Theft Statute, G.L. c. 266, § 37E, et seq.**
**(As to TCNC and Syed in his Personal Capacity)**

45.     The allegations of Paragraphs 1 through 44 of this Complaint are realleged and incorporated by reference.

46.     The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.A. § 227, makes it unlawful for any person within the United States, in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly

transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongly obtain anything of value. 47 U.S.C.A. § 227(e)(1).

47.    G.L c. 266, § 37E (Use of personal identification of another; identity fraud; penalty; restitution) provides as follows:

(a) For purposes of this section, the following words shall have the following meanings:

"Harass", willfully and maliciously engage in an act directed at a specific person or persons, which act seriously alarms or annoys such person or persons and would cause a reasonable person to suffer substantial emotional distress.

"Personal identifying information", any name or number that may be used, alone or in conjunction with any other information, to assume the identity of an individual, including any name, address, **telephone number**, driver's license number, social security number, place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, credit card number or computer password identification.

"Pose", to falsely represent oneself, directly or indirectly, as another person or persons.

"Victim", any person who has suffered financial loss or any entity that provided money, credit, goods, services or anything of value and has suffered financial loss as a direct result of the commission or attempted commission of a violation of this section.

(b) Whoever, with intent to defraud, poses as another person without the express authorization of that person and uses such person's personal identifying information to obtain or to attempt to obtain money, credit, goods, services, anything of value, any identification card or other evidence of such person's identity, or to harass another shall be guilty of identity fraud and shall be punished by a fine of not more than $5,000 or imprisonment in a house of correction for not more than two and one-half years, or by both such fine and imprisonment.

(c) Whoever, with intent to defraud, obtains personal identifying information about another person without the express authorization of such person, with the intent to pose as such person or who obtains personal identifying information about a person without the express authorization of such person in order to assist another to pose as such person in order to obtain money, credit, goods, services, anything of value, any identification card or other evidence of such person's identity, or to harass another shall be guilty of the crime of identity fraud and shall be punished by a fine of not more than $5,000 or imprisonment in a house of correction for not more than two and one-half years, or by both such fine and imprisonment.

(d) A person found guilty of violating any provisions of this section shall, in addition to any other punishment, be ordered to make restitution for financial loss sustained by a victim as a result of such violation. Financial loss may include any costs incurred by such victim in correcting the credit history of such victim or any costs incurred in connection with any civil or administrative proceeding to satisfy any debt or other obligation of such victim, including lost wages and attorney's fees.

(e) A law enforcement officer may arrest without warrant any person he has probable cause to believe has committed the offense of identity fraud as defined in this section.

(f) A law enforcement officer shall accept a police incident report from a victim and shall provide a copy to such victim, if requested, within 24 hours. Such police incident reports may be filed in any county where a victim resides, or in any county where the owner or license holder of personal information stores or maintains said personal information, the owner's or license holder's principal place of business or any county in which the breach of security occurred, in whole or in part.

48.     The Defendants violated G.L. c. 266, § 37E. As a direct and proximate result of Defendants' violation of G.L. c. 266, § 37E, Doane suffered and continues to suffer the serious harm set forth herein.

49.     As a result of Defendants' conduct hereunder, Doane is entitled to restitution pursuant to G.L c. 266, § 37E for his financial loss sustained and for his costs in any civil proceeding in which Doane may be subject and for this proceeding with respect to a declaration that the Defendants spoofed Doane's name and phone number to make it appear that Doane made calls to those in which, in fact, the Defendants actually made.

50.     Defendants' violations of 47 U.S.C.A. § 227(e)(1) and G.L c. 266, § 37E are also per se violations of G.L. c. 93A.

## <u>COUNT II</u>
**Violations of the Federal Criminal Harassment Act, 18 U.S.C.A. 2261A et seq., and the Massachusetts Criminal Harassment Statute, G.L. c. 265, §43A
(As to TCNC and Syed in his Personal Capacity)**

51.     The allegations of Paragraphs 1 through 50 of this Complaint are realleged and incorporated by reference.

52.     18 U.S.C.A. 2261A (the Federal Criminal Harassment Act) provides in part:

Whoever … (2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that — (A) places that person in reasonable fear of the death of or serious bodily injury to a person described in clause (i), (ii), or (iii) of paragraph (1)(A); or (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A), shall be punished as provided in section 2261(b) of this title.

53.    G.L. c. 265, § 43A (Criminal harassment; punishment) provides as follows:

(a) Whoever willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress, shall be guilty of the crime of criminal harassment and shall be punished by imprisonment in a house of correction for not more than 21/2 years or by a fine of not more than $1,000, or by both such fine and imprisonment. The conduct or acts described in this paragraph shall include, but not be limited to, conduct or acts conducted by mail or by use of a telephonic or telecommunication device or electronic communication device including, but not limited to, any device that transfers signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo-electronic or photo-optical system, including, but not limited to, electronic mail, internet communications, instant messages or facsimile communications.

(b) Whoever, after having been convicted of the crime of criminal harassment, commits a second or subsequent such crime, or whoever commits the crime of criminal harassment having previously been convicted of a violation of section 43, shall be punished by imprisonment in a house of correction for not more than two and one-half years or by imprisonment in the state prison for not more than ten years.

54.    The Defendants violated 18 U.S.C.A. 2261A and G.L. c. 265, § 43A. Defendants' violation of 18 U.S.C.A. 2261A and G.L c. 265, § 43A caused Doane and continues to cause Doane the serious harm set forth herein.

55.    Defendants' violations of 18 U.S.C.A. 2261A and G.L. c. 265, § 43A are also per se violations of G.L. c. 93A.

### COUNT III
### Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 et seq.
### (As TCNC and Syed in his Personal Capacity)

56.    The allegations of Paragraphs 1 through 55 of this Complaint are realleged and incorporated by reference.

57.    Doane was a "person" as defined by TCPA, 47 U.S.C. §§ 227 et seq.;

58.    Each call defendants made to others using Doane's personal identifying information was an "unsolicited advertisement" as defined by TCPA, 47 U.S.C § 227(a)(5);

59.    Each call the Defendants initiated attempted to have those receiving the calls purchase products and services from the Defendants.

60.    Defendants violated 47. U.S.C. §227(b)(1)(iii) by calling recipients cellphones using an automatic telephone dialing system (ATDS) without their consent.

61.    The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

62.     "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

63.     "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually, store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it. *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 951 (9th Cir. 2009).

64.     The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of automatic telephone dialing system. *Id*.

65.     Defendants violated the TCPA through their agent by placing not less than ten thousand (10,000) telemarketing calls to persons using ATDS, without their consent, while causing Doane's personal identifying information to wrongly appear on recipients caller ID's.

66.     Pursuant to 47 U.S.C. § 227(b)(3)(B), defendant is liable to Doane for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. § 227(b)(3)(C), defendant's willful and knowing violations of the TCPA trigger treble damages to which Doane is entitled.

67.     Specifically, "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State -- **(A)** an action **based on a violation of this subsection** or the regulations prescribed under this subsection to enjoin such violation, **(B)** an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or **(C)** both such actions.

68.     Defendants willfully and knowingly violated 47. U.S.C. §227(b)(1) not less than ten thousand times (10,000), entitling Doane to treble damages under this count in the amount of Fifteen Million Dollars ($15,000,000).

## COUNT IV
### Defamation
### (As to TCNC and Syed in his Personal Capacity)

69.     The allegations of Paragraphs 1 through 68 of this Complaint are realleged and incorporated by reference.

70.     Defendant TCNC has an extremely poor reputation with regard to its business practices, which has been viewed as "scamming," earning Defendant TCNC an "F" rating by the Better Business Bureau.

71.     Defendant TCNC was telemarketing those on the FTC's do-not-call list, and senior citizens, using Doane's identity, attempting to solicit a product that many consider a scam.

72.     A persons association with the Defendant TCNC has the effect of causing that person to be considered disreputable, and a "scammer."

73.     Defendant TCNC, and defendant Syed in his personal capacity, caused, in each one of its calls using Doane's personal identifying information, Doane to be associated with the Defendant TCNC's conduct and extremely poor reputation, thereby causing Doane's reputation to be considered disreputable, and Doane to be considered a scammer.

74.     As a result of the Defendants' conduct, Doane was subject to hatred, ridicule, and contempt by those in the community generally, and specifically, those who Defendants contacted using Doane's personal identifying information.

75.     Defendant TCNC, and Defendant Syed in his personal capacity, caused Doane's reputation to be harmed, and caused Doane to be subjected to hatred, ridicule, and contempt, and thus these defendants are at fault.

76.     The Defendants' conduct constitutes defamation.

77.     On May 8, 2017, Doane, in his 30-day G.L. c. 93A demand letter that was delivered to Defendants, demanded that TCNC, among other things, "immediately issue a letter to each of those called explaining the circumstances and retracting what amounts to defamatory statements, with copies to [Doane];"

78.     The Defendants, to date, have not complied with Doane's demand.

79.     As a result of Defendants' conduct hereunder, Doane is entitled to his actual damages.

80.     Defendants' conduct is also unfair and deceptive in violation of G.L. c. 93A.

## COUNT V
### Invasion of Privacy and Intrusion Upon Seclusion, G.L. c. 214, § 1B
### (As to TCNC and Syed in his Personal Capacity)

81.     The allegations of Paragraphs 1 through 80 of this Complaint are realleged and incorporated by reference.

82.     G.L. c. 214, § 1B, inserted by St. 1974, c. 193, § 1, provides in relevant part: "A person shall have a right against unreasonable, substantial or serious interference with his privacy."

83.     The *Restatement of Torts, Second*, § 652(b) defines intrusion upon seclusion as "One who intentionally intrudes … upon the solitude or seclusion, or his private affairs or concerns, is subject to liability to the other for invasion of privacy. If the intrusion would be highly offensive to a reasonable person."

84.     Massachusetts further recognizes the Plaintiff's right to be free from invasions of privacy, thus Defendants violated Massachusetts state law.

85.     Defendants intentionally used Doane's personal identifying information to call thousands, if not hundreds of thousands, sometimes repeatedly, and often hung up, with the result that those receiving the calls, believing it was Doane who called, in turn, called Doane to, among other things, find out what he wanted and why he was repeatedly calling, or to ask Doane to stop

calling, or to advise Doane that he would be reported to the authorities or sued, or to simply call Doane angry and to ridicule him, among other things.

86.    The Defendants knew or should have known that their intentional use of Doane's personal identifying information would have the consequences it had, and continues to have.

87.    The telephone calls the Defendants caused to be made to Doane, and the threat of other calls or actions, including the potential for lawsuits against Doane, are so intrusive as to be considered "hounding the plaintiff," and "a substantial burden to his existence," thus satisfying the *Restatement of Torts, Second*, § 652(b) requirement for an invasion of privacy.

88.    The conduct of the Defendants, which resulted in multiple invasions of privacy over a long period, and continues to result in the invasion of Doane's privacy, would be considered highly offensive to a reasonable person.

89.    As a proximate cause of the Defendants' conduct, Doane suffered substantial harms, continues to suffer harms, and is expected to suffer harms in the future.

90.    As a result of Defendants' conduct hereunder, Doane is entitled to his actual damages.

91.    Defendants' violations of G.L. c. 214, § 1B is also a per se violation of G.L. c. 93A.

## COUNT VI
### Trespass and Nuisance
### (As to TCNC and Syed in his Personal Capacity)

92.    The allegations of Paragraphs 1 through 91 of this Complaint are realleged and incorporated by reference.

93.    The Defendants used Doane's personal identifying information without his consent during their telemarketing campaign.

94.    The Defendants, using Doane's personal identifying information, called thousands if not hundreds of thousands of persons in several states, sometimes repeatedly.

95.    As a proximate cause of the Defendants' conduct, hundreds of persons called Doane to see what he wanted, to tell him to stop calling, to notify him that he was calling while they were on the FTC's do-not-call registry and that he was being reported to the authorities, or to advise Doane that he would be sued.

96.    As a proximate cause of the Defendants' conduct, circumstances have been created that present a constant threat to Doane and thus comprises of a nuisance. Specifically, as a proximate cause of the Defendants' conduct, Doane may be sued by any of the thousands who believe Doane repeatedly called to them while they were on the do-not-call list, or to harass them.

97.    On May 8, 2017, Doane, in his 30-day G.L. c. 93A demand letter that was delivered to Defendants, requested that TCNC "immediately provide a complete list of those contacted using [Doane's] personal identifying information, provide it to [Doane], and immediately issue a letter to each of those called explaining the circumstances and retracting what amounts to defamatory statements, with copies to [Doane];" and that TCNC immediately enter voluntarily into an agreement admitting liability and that indemnifies [Doane] from any and all claims by any person arising from those calls that wrongly used [Doane's] personal identifying information …"

98.    The Defendants to date have refused to meet Doane's demands.

99.    As a proximate cause of the Defendants' conduct, Doane suffered substantial harms, continues to suffer harms, and is expected to suffer harms in the future.

100.    As a result of Defendants' conduct hereunder, Doane is entitled to his actual damages.

101.    Further, pursuant to G.L. c. 243, § 1, upon prevailing in his tort for nuisance, "the court may, in addition to the judgment for damages and costs, enter judgment that the nuisance be abated and removed and may issue execution for the damages and costs and a separate warrant to the proper officer, requiring him to abate and remove the nuisance at the expense of the defendant as public and common nuisances are abated and removed."

102.    Upon prevailing under this Count, Doane requests judgment for an abatement of the nuisance and an order that the Defendants "immediately provide a complete list of those contacted using [Doane's] personal identifying information, provide it to [Doane], and immediately issue a letter to each of those called explaining the circumstances and retracting what amounts to defamatory statements, with copies to [Doane];" and that TCNC immediately enter voluntarily into an agreement admitting liability and that indemnifies [Doane] from any and all claims by any person arising from those calls that wrongly used [Doane's] personal identifying information …"

**COUNT VII**
**Intentional Infliction of Emotional Distress**
**(As to TCNC and Syed in his Personal Capacity)**

103.    The allegations of Paragraphs 1 through 102 of this Complaint are realleged and incorporated by reference.

104.    The Defendants intended to inflict emotional distress upon Doane or knew or should have known that emotional distress would be the likely result of the Defendants' conduct.

105.    The Defendants' conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community."

106.    The actions of the Defendants were the cause of Doane's distress.

107.    The emotional distress sustained by Doane at the hands of the Defendants was "severe" and of a nature "that no reasonable man could be expected to endure it."

**COUNT VIII**
**Violations of the Massachusetts Consumer Protection Act, G.L. c. 93A**
**(As to TCNC and Syed in his Personal Capacity)**

108.    The allegations of Paragraphs 1 through 107 of this Complaint are realleged and incorporated by reference.

109.    At all times relevant Defendants were engaged in trade or commerce within the meaning of G.L. c. 93A §2.

110.    Defendants, as detailed in the prior counts of this complaint, engaged in actual and *per se* unfair and deceptive practices declared unlawful by G.L. c. 93A.

111.    The regulations promulgated by the Massachusetts Attorney General, 940 C.M.R. 3.16, state that "[w]ithout limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c. 92A, § 2 if … (4)" it is a violation of G.L. c. 93A if "[i]t violates the Federal Trade Commission Act … or other Federal Consumer Protection statutes within the purview of M.G.L. c. 93A, § 2."

112.    Doane was harmed by the Defendants' unfair and deceptive acts while engaged in trade or commerce.

113.    On May 8, 2017, Doane sent Defendant TSNC and its officers in their individual capacities a 30-day G.L. c. 93A demand letter.

114.    The demand letter requested immediate action in order to mitigate Doane's damages, demanded monetary relief within 30 days.

115.    Defendants failed to respond to Doane's 30-day G.L. c. 93A demand letter.

116.    Defendants' refusal to respond to Doane's request for immediate action, and Defendants failure to respond to the demand for monetary relief within 30 days is also unfair and deceptive.

117.    The Defendants' violations of G.L. c. 93A were willful and knowing.

118.    As a direct and proximate cause of the Defendant's actions, Doane suffered past harm, continues to suffer harm, and expected to continue suffering harm for the foreseeable future.

119.    Doane is entitled to an award of not less than $25.00 for each incident in which Defendant's called a party using Doane's personal identifying information, i.e., nominal damages, or his actual damages.

120.    Doane, due to Defendants' failure to respond to Doane's 30-day demand letter with a reasonable settlement offer, and because Defendants' conduct is unfair and deceptive, is entitled, pursuant to the punitive provisions of G.L. c. 93A, to not less than double his actual damages, up to treble his actual damages, as to each Defendant.

### COUNT IX
### Civil Conspiracy
**(As to All Known and Yet-To-Be Determined Defendants)**

121.    The allegations of Paragraphs 1 through 120 of this Complaint are realleged and incorporated by reference.

122.    As to Defendant TCNC and Defendant Syed, they, acting in unison with the John Doe(s) and/or Jane Doe(s), in their Individual Capacities and/or in their Capacities as Officers or Employees of Tele Circuit Network Corporation, and with other XYZ Companies and/or John Doe(s) and/or Jane Doe(s), had a peculiar power of coercion over Doane that they would not have had if they had been acting independently.

123.    These Defendants acted with a common design or agreement to commit the wrongful tortious acts complained of herein, and these acts were done in furtherance of the common design or agreement.

**WHEREFORE**, as to all Counts, the Plaintiff requests that this Court:

1.  Enter judgment for the Plaintiff against all Defendants;

2.  Award Plaintiff restitution for his financial loss and his costs of this proceeding pursuant to G.L. c. 266, § 37E;

3.  Award Plaintiff his actual damages to be determined at trial.

4.  Award Plaintiff his minimum sum-certain statutory damages of not less than $1,500 per each of the not less than 10,000 violations of the TCPA, or Fifteen Million Dollars ($15,000,000);

5. Declare Defendants' actions were willful, knowing, intentional, unfair, and deceptive, in violation of G.L. c. 93A;

6. Award punitive damages to Plaintiff in the amount of not less than twice and up to three times his actual damages as to each Defendant;

7. Declare that Defendants, rather than Doane, were responsible for those calls using Doane's personal identifying information, and that pursuant to G.L. c. 243, § 1, Defendants abate the ongoing nuisance to Doane that the Defendants created by their use of Doane's personal identifying information. Specifically, that the Defendants be ordered to notice all those called accordingly.

8. Award interest, costs, and attorney's fees to the Plaintiff; and

9. Award such other relief as this Court deems just and proper.

ROBERT A. DOANE, by his Attorney


/s/ RICHARD B. REILING
RICHARD B. REILING BBO 629203
Bottone | Reiling
63 Atlantic Ave., 3rd Floor
Boston, MA 02110
Phone:     617-412-4291
Facsimile: 617-412-4406
reilinglaw@aol.com

Date:   September 18, 2017


## JURY DEMAND

Plaintiff demands trial by jury as to all issues herein.


/s/RICHARD B. REILING
RICHARD B. REILING BBO 629203
Attorney for Plaintiff