UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROBERT A. DOANE,<br><br>    Plaintiff,<br><br>v.<br><br>TELE CIRCUIT NETWORK<br>CORPORATION, et al.,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:19-CV-00111-JPB |

## ORDER

This matter is before the Court on Tele Circuit Network Corporation and Ashar Syed's (collectively, "Defendants") Motions to Dismiss Plaintiff's Second Amended Complaint [Docs. 72 and 73].  This Court finds as follows:

## BACKGROUND

Robert Doane ("Plaintiff") resides in Massachusetts and maintains a cellphone.  [Doc. 71, p. 5].  Plaintiff's cellphone number has been associated with his household since he was a child, and the number is registered on the "do not call list" maintained by the Federal Trade Commission.  Id.  Defendants are in the telecommunications industry and provide local, long distance and cellular service to those in Georgia and other states.  Id.

Defendants have a call center located in Pakistan and utilize Pakistani employees to conduct telemarketing on Defendants' behalf.  Id. at 5–6.  The

purpose of Defendants' telemarketing activities is to attempt to switch customers—predominately senior citizens—from their present service provider to Tele Circuit Network Corporation. Id. at 6.

According to Plaintiff, as part of Defendants' telemarketing activities, Defendants "spoofed"[1] Plaintiff's name and cellphone number and robocalled thousands of consumers in Texas, Florida, North Carolina, South Carolina, Alabama and Tennessee. Id. at 2. Indeed, when these consumers were called—many of whom were on the do-not-call registry—Plaintiff's name and cellphone number appeared on the call recipients' caller ID displays. Id.

On April 26, 2017, Plaintiff began receiving an influx of calls from individuals claiming to have a received a call from Plaintiff's cellphone. Id. at 10. Many individuals were irate and threatened to sue Plaintiff for harassment. Id. at 11. Others threatened to contact the police or Federal Bureau of Investigation. Id. One individual even threatened to inflict physical harm. Id. at 14. Plaintiff's voicemail quickly filled to capacity,[2] and Plaintiff's phone software began behaving erratically. Id. at 11.

---

[1] Spoofing is when someone or something pretends to be something else in an attempt to gain confidence. Caller ID spoofing happens when scammers fool the caller ID by making the call appear to be coming from somewhere it is not. In this case, the call centers used Plaintiff's name and cellphone number in an attempt to make it look like the call was not coming from a telemarketer in Pakistan.

[2] At least 130 voicemails were left in a two-day period. [Doc. 71, p. 13].

Plaintiff sued Defendants in the United States District Court for the District of Massachusetts. [Doc. 1]. After the case was transferred to this Court, Plaintiff filed a Second Amended Complaint. [Doc. 71]. In the Second Amended Complaint, Plaintiff asserts the following causes of action: (1) violation of the Massachusetts Telemarketer Solicitations Act ("MTSA"); (2) violation of the Massachusetts Identity Theft Statute ("MITS"); (3) defamation; (4) invasion of privacy and intrusion upon seclusion; (5) wrongful appropriation of Plaintiff's name; (6) intentional infliction of emotional distress; (7) violation of the Massachusetts Consumer Protection Act ("Chapter 93A"); and (8) agency liability.[3] Currently pending before the Court are Defendants' Motions to Dismiss. [Docs. 72 and 73].

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship

---

[3] Plaintiff also asserted two federal claims and state law claims for trespass and nuisance. The federal claims have been dismissed without prejudice, and Plaintiff agreed to withdraw the trespass and nuisance claim. See [Doc. 80]; [Doc. 74, p. 1]. As to the remaining state law claims, the Court is satisfied that it has jurisdiction. Specifically, the parties are completely diverse, and the Second Amended Complaint demonstrates that the amount in controversy exceeds $75,000.

Title Co., 491 F. App'x 988, 989 (11th Cir. 2012).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement.  Id.  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (citation omitted).  In sum, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678).  While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations.  Iqbal, 556 U.S. at 678.  Accordingly, evaluation of a motion to dismiss requires two steps:  (1) a court must eliminate any allegations in the pleading that are merely legal conclusions; and (2) where there are remaining well-pleaded factual allegations, a

court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## DISCUSSION

Defendants moved to dismiss all the causes of action. The Court will discuss the MTSA claim first.

### I.   Massachusetts Telemarketing Solicitations Act ("MTSA")

By spoofing his cellphone number, Plaintiff contends that Defendants violated § 4 of the MTSA, which provides that "[n]o telephone solicitor shall intentionally cause to be installed or shall intentionally use a blocking device or service to circumvent a consumer's use of a call identification service or device." Mass. Gen. Laws ch. 159C, § 4. Defendants argue that this claim is subject to dismissal because Plaintiff is unable to maintain a private right of action. The Court agrees.

§ 8 of the MTSA states that the MTSA may be enforced by the attorney general and certain individuals. Notably, the MTSA provides that the attorney general "may initiate proceedings relating to a knowing violation or threatened violation of this chapter." Mass. Gen. Laws. ch. 159C, § 8(a). Unlike the attorney general who can bring a proceeding for any violation, individuals may only bring an action if they have received "more than 1 unsolicited telephonic sales call within a 12-month period by or on behalf of the same person or entity in violation

of this chapter." Mass. Gen. Laws. ch. 159C, § 8(b).  While Plaintiff in this case contends that he received numerous phone calls, Plaintiff fails to allege that any of these calls were telephonic sales calls as required by the statute.  Instead, Plaintiff received complaints about telephonic sales calls.  Because an individual is only entitled to enforce the MTSA if that individual received more than one unsolicited telephonic sales call, this claim is dismissed.  Thus, to the extent that Defendants' motions seek dismissal of the MTSA claim, the motions are **GRANTED**.

      II.    **Massachusetts Identity Theft Statute ("MITS")**

Plaintiff asserts that Defendants violated the MITS by spoofing his cellphone number.  In Massachusetts, identity theft is considered a crime against property and punishable by a fine of not more than $5,000 or imprisonment of not more than 2.5 years.  Mass. Gen. Laws ch. 266, § 37E.  Defendants contend that this claim must be dismissed because it is a criminal statute that does not provide for a private right of action.  Defendants are correct; Plaintiff's claim fails because "no private right of action for damages exists under . . . the Massachusetts criminal identity theft statute."  Andrews v. Earl's Rests. USA Inc., No. 19-cv-817, 2019 WL 6879214, at *2 (D.N.H. Dec. 17, 2019).  Because no private right of action

exists under the MITS, the claim is dismissed. Thus, to the extent that Defendants argue for dismissal of the MITS claim, the motions are **GRANTED**.[4]

### III.  Defamation

In Plaintiff's defamation claim, Plaintiff argues that by utilizing Plaintiff's name and cellphone number, Defendants "wrongfully represented to consumers" that Plaintiff was associated with Tele Circuit Network Corporation, which has an "extremely poor reputation with regard to its business practices." [Doc. 71, pp. 19–20]. Plaintiff asserts that his personal reputation was harmed because he was associated with Defendants' criminal activity.

Defendants argue that dismissal is required for two reasons. First, they contend that defamation is subject to a heightened pleading standard which Plaintiff failed to meet. Second, they assert that Plaintiff's claim must fail because "Plaintiff points to no defamatory words on the part of Tele Circuit 'of and concerning' him." [Doc. 72-1, p. 16].

As stated above, Defendants argue that Plaintiff has failed to meet the heightened pleading standard. In actions pending in Massachusetts state courts, defamation claims are subject to special pleading requirements, and defamation

---

[4] Despite the dismissal of this claim, Plaintiff is not precluded from arguing that the statute provides a basis to find an unfair or deceptive act or practice under Chapter 93A. In other words, within the context of Plaintiff's Chapter 93A claim, Plaintiff may assert that a violation of the MITS constitutes a violation of Chapter 93A.

plaintiffs must plead the elements of their claims with specificity in order to survive a motion to dismiss.  Mulvihill v. Spalding Sports Worldwide, Inc., 184 F. Supp. 2d 99, 104 (D. Mass. 2002).  The elements are as follows:  (1) "the general tenor of the libel or slander claim, along with the precise wording of at least one sentence of the alleged defamatory statement(s)"; (2) "the means and approximate dates of publication"; and (3) "the falsity of those statements."  Id.  In federal court, however, no such heightened pleading requirement exists.  Bleau v. Greater Lynn Mental Health & Retardation Ass'n, 371 F. Supp. 2d 1, 2 (D. Mass. June 3, 2005) (stating that Dorn v. Astra USA, 975 F. Supp. 388 (D. Mass. 1997),[5] has been overruled to the extent that it held that a heighted pleading standard existed for defamation claims).  Since cases pending in federal court need not meet a heightened pleading standard, Defendants are not entitled to dismissal on this ground.

Defendants also argue that dismissal is required because Plaintiff points to no defamatory words.  Importantly, words are not required to maintain a defamation claim in Massachusetts.  In fact, "defamatory publication may result from the physical actions of a defendant."  Phelan v. May Dep't Stores Co., 819 N.E.2d 550, 554 (Mass. 2004).  Stated another way, "an individual's actions, separate from any written or spoken statements, may be sufficient grounds for a

---

[5] Defendants relied on Dorn in arguing for dismissal.

jury to find a cause of action [for defamation]." Id. at 555.  Because words are not necessary to state a defamation claim, this is not a reason for dismissal.

As explained above, Defendants are not entitled to dismissal due to Plaintiff's failure to meet a heightened pleading standard.  Moreover, dismissal is not required due to Plaintiff's failure to identify defamatory words.  As such, to the extent that Defendants seek dismissal of the defamation claim, the motions are **DENIED**.

    IV.    **Invasion of Privacy and Intrusion upon Seclusion**

In the Second Amended Complaint, Plaintiff brings an action for invasion of privacy and intrusion upon seclusion in violation of the Massachusetts Right to Privacy Law.  The gist of the claim is that Defendants used Plaintiff's personal identifying information (his name and cellphone number) to illegally call thousands, if not hundreds of thousands, of consumers.  As a result of Defendants' actions, Plaintiff alleges that he was called repeatedly, resulting in multiple invasions of privacy over a long period.

Massachusetts law provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy."  Mass. Gen. Laws ch. 214, § 1B.  The statute's broad terms allow for a plaintiff to pursue various invasion-of-privacy theories, including public disclosure of private facts

and intrusion upon seclusion.  Doe v. Tenet Healthcare Corp., No. 23-12978, 2024 WL 1756075, at *5 (D. Mass. Apr. 23, 2024).

Most of the case law in Massachusetts involves public disclosure of private facts.  Polay v. McMahon, 10 N.E.3d 1122, 1126 (Mass. 2014).  In those cases, a plaintiff must prove, among other things, that there was "a gathering and dissemination of facts of a private nature."  Doe, 2024 WL 1756075, at *5.

Defendants argue that dismissal is required because Defendants did not disclose any information that was highly personal or of an intimate nature.  The Court agrees with Defendants that the disclosure of a name and cellphone number are not facts of a highly personal or intimate nature.  See Branyan v. Sw. Airlines Co., 105 F. Supp. 3d 120, 126 (D. Mass. 2015) (holding that a person's name, home address and employer are "hardly facts of a highly personal or intimate nature").  Thus, to the extent that Plaintiff even brings a claim for public disclosure of private facts, the claim is **DISMISSED**.[6]

As stated above, "a plaintiff may also support a claim of invasion of privacy by showing that a defendant has intruded unreasonably upon the plaintiff's 'solitude' or 'seclusion.'"  Polay, 10 N.E.3d at 1126.  As to these types of privacy claims, a plaintiff must allege that the intrusion is "both unreasonable and

---

[6] The Court is not convinced that Plaintiff alleges a claim for public disclosure of private facts.  In the event that such a claim was intended, however, the Court finds that the publication of a name and phone number are not sufficient to state a claim.

10

substantial or serious." Walker v. Jackson, 952 F. Supp. 2d 343, 354 (D. Mass. 2013). In this case, Plaintiff alleges that Defendants' use of his name and cellphone number was unreasonable and that the calls he received were both substantial in number and serious in nature. Defendants make no argument as to why Plaintiff's intrusion upon seclusion claim is subject to dismissal. Because Defendants failed to argue why the intrusion upon seclusion claim should be dismissed, Defendants' motions are **DENIED**.

### V. Wrongful Appropriation of Plaintiff's Name

Plaintiff seeks to recover for Defendants' alleged wrongful appropriation of his name. In the Second Amended Complaint, Plaintiff argues that by displacing their own name with his name, Defendants exploited the value of his name for advertising or trade. Under Massachusetts law:

> Any person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without his written consent may bring a civil action in the superior court against the person so using his name, portrait or picture, to prevent and restrain the use thereof; and may recover damages for any injuries sustained by reason of such use.

Mass. Gen. Laws ch. 214, §3A. The interest protected by this statute is "not having the commercial value of one's name, portrait or picture appropriated to the benefit of another." Tropeano v. Atl. Monthly Co., 400 N.E.2d 847, 850 (Mass. 1980). "An appropriation is actionable . . . if 'the defendant use[d] the plaintiff's

11

name . . . deliberately to exploit its value for advertising or trade purposes.'" Tedeschi-Freij v. Percy L. Grp., P.C., 172 N.E.3d 774, 776 (Mass. App. Ct. 2021).

Defendants assert that Plaintiff has not stated a claim for wrongful appropriation of Plaintiff's name.  In essence, Defendants argue that the Second Amended Complaint is conclusory and devoid of any facts that would suggest that Plaintiff's name has any commercial value.  Plaintiff, on the other hand, contends that Defendants used Plaintiff's "name and number to sell its 'services' to consumers in several states without [Plaintiff's] consent."  [Doc. 74, p. 22].

In reviewing Plaintiff's Second Amended Complaint, the Court finds that Plaintiff has stated a claim for relief.  Indeed, Plaintiff alleged that Defendants used his name in an attempt to sell their services (i.e., for purpose of trade).  Moreover, Plaintiff plausibly asserted that his name has value because it was used to hide the fact that the telemarketing calls were coming from Pakistan.  Thus, Plaintiff's name was used to benefit Defendants.  Because Plaintiff's allegations are sufficient to state a claim for wrongful appropriation, Defendants' motions are **DENIED**.[7]

---

[7] The Court notes that the statute contains a requirement that the defendant use the name "within the commonwealth."  Mass. Gen. Laws ch. 214, § 3A.  Because neither party addressed this requirement, it will not be discussed further at this time.

## VI.   Intentional Infliction of Emotional Distress

In the Second Amended Complaint, Plaintiff asserts that he is entitled to damages for intentional infliction of emotional distress.  In Massachusetts, to state a claim for intentional infliction of emotional distress, a plaintiff must plead the following:  (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress would result from his conduct; (2) that the conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable in a civilized community; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff's emotional distress was severe and of such a nature that no reasonable person could be expected to endure it.  Conley v. Romeri, 806 N.E.2d 933, 937 (Mass. App. Ct. 2004); see also Dushkin v. Desai, 18 F. Supp. 2d 117, 121 (D. Mass. 1998).

Defendants contend that Plaintiff's intentional inflectional of emotional distress claim must be dismissed because the entirety of Plaintiff's claim consists of reciting the elements and nothing more.  Defendants' argument is persuasive.

In this case, Plaintiff only alleges that (1) Defendants "intended to inflict emotional distress upon [Plaintiff] or knew or should have known that emotional distress would be the likely result of [Defendants'] conduct"; (2) "Defendants' conduct was illegal, extreme and outrageous, was beyond all possible bounds of decency, and was 'utterly intolerable in a civilized community'"; (3) "[t]he actions

of [Defendants] were the cause of [Plaintiff's] distress as set forth above"; and (4) "[t]he emotional distress sustained by [Plaintiff] at the hands of [Defendants] was severe and of a nature that no reasonable man could be expected to endure it." [Doc. 71, pp. 23–24]. This is nothing more than a "formulaic recitation of the elements of a cause of action," which will not do. See Twombly, 550 U.S. at 555. The Second Amended Complaint, for example, provides no factual support which would show that Defendants intended to inflict emotional distress upon Plaintiff or knew or should have known that emotional distress would result. Because Plaintiff must do more than state the elements of the cause of action, the intentional infliction of emotional distress claim must be dismissed. Accordingly, to the extent that Defendants argue that the intentional infliction of emotional distress claim should be dismissed, the motions are **GRANTED**.[8]

### VII.   Massachusetts Consumer Protection Act ("Chapter 93A")

Plaintiff asserts that Defendants violated Chapter 93A, which prohibits unfair methods of competition and unfair or deceptive acts or practices in the

---

[8] The cause of action only lists the elements of intentional infliction of emotional distress. Elsewhere in the Second Amended Complaint, however, Plaintiff alleges that he suffered "extreme worry and apprehension, loss of sleep and daytime somnolence, and severe emotional distress with physical manifestations." [Doc. 71, p. 2]. In Massachusetts, ailments like "lost sleep, anxiety, and depression do not amount to emotional distress that is 'severe of a nature that no reasonable man could expect to endure it.'" Maio v. TD Bank, N.A., No. 1:22-CV-10578, 2023 WL 2465799, at *7 (D. Mass. Mar. 10, 2023). Because the Second Amended Complaint is devoid of factual allegations regarding emotional distress so severe that no reasonable man could endure it, dismissal is proper for this additional reason.

conduct of any trade or commerce.  Individuals asserting 93A claims must allege: (1) that the defendant committed an unfair or deceptive act or practice; (2) that the unfair or deceptive act occurred in the conduct of any trade or commerce; (3) that the plaintiff suffered an injury; and (4) that the defendant's unfair or deceptive conduct was the cause of the injury.  UBS Fin. Servs., Inc. v. Aliberti, 133 N.E.3d 277, 291 (Mass. 2019).

Defendants contend that dismissal is required here because Plaintiff failed to allege that he was in a business relationship with Defendants.  In contrast, Plaintiff argues that privity is not required to bring a Chapter 93A claim.  Plaintiff has the better argument.

§ 9 of Chapter 93A states that "[a]ny person" who has been injured by another's act or practice that is unfair or deceptive may bring a private right of action.  Mass. Gen. Laws ch. 93A, § 9(1).  Courts in Massachusetts have "long held that '[p]arties need not be in privity for their actions to come within the reach of [Chapter 93A].'"  UBS, 133 N.E.3d at 292.  Privity is not required because "[t]he plain and unambiguous language" of Chapter 93A "allows *any* person who has been injured by trade or commerce . . . to bring a cause of action."  Ciardi v. F. Hoffmann-La Roche, Ltd., 762 N.E.2d 303, 309 (Mass. 2002) (emphasis added).

Given the plain language of the statute, the Court is not persuaded that Plaintiff must show a business relationship between the parties.  It is enough that

Plaintiff alleged that the unfair or deceptive act (i.e., spoofing Plaintiff's cellphone number in an attempt to sell products to senior citizens) occurred in the conduct of any trade or commerce. As such, to the extent that Defendants argue that dismissal of the Chapter 93A claim is required due to the lack of a business relationship, the motions are **DENIED**.[9]

## VIII.   Agency Liability

The final count of the Second Amended Complaint is titled, "Agency Liability." [Doc. 71, p. 25]. In that count, Plaintiff alleges "that Defendants engaged in the telemarketing activities and spoofing described herein. In the alternative, in the event that [Defendants] conducted any portion of said illegal actions by and through [an independent telemarketer]," "such telemarketer[s] acted with the actual and/or apparent authority granted" to them by Defendants. Id. at 25–26. Importantly, Plaintiff also alleges that Defendants directed and controlled

---

[9] The Court acknowledges that some courts have required a plaintiff to show "some business, commercial, or transactional relationship" for claims brought under § 9 of Chapter 93A. See, e.g., Steinmetz v. Coyle & Caron, Inc., 862 F.3d 128, 141 (1st Cir. 2017); John Boyd Co. v. Boston Gas Co., 775 F. Supp. 435, 440 (D. Mass. 1991). These courts reason that a business relationship is required because Chapter 93A "is intended to protect against unfair and deceptive practices in trade, not unfair practices in general." L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc., 121 F. Supp. 2d 147, 151 (D. Mass. 2000). These courts also rely on the "history of development of Chapter 93A." Cash Energy, Inc. v. Weiner, 768 F. Supp. 892, 894 (D. Mass. 1991). The Court is more comfortable relying on the plain language of the statute instead of legislative history.

all aspects of the telemarketing activities, including the methods, procedures, scripts, dialers and equipment used.

In Massachusetts, a "principal is liable for the agent's conduct when the agent acts with 'the actual or apparent authority of the principal in the transaction.'" Fergus v. Ross, 79 N.E.3d 421, 424 (Mass. 2017). Actual authority concerns the agent's power to affect the principal's relations with third parties as manifested to the agent by the principal. Lowell Hous. Auth. v. PSC Int'l, Inc., 759 F. Supp. 2d 104, 107 (D. Mass. 2010). For actual authority to exist, "[t]he principal must expressly communicate to the agent the acts [he] wants the agent to perform and the extent of the agent's authority to perform those acts." Id. at 108. Conversely, apparent authority exists when the principal, by his words or conduct, causes a third person to reasonably believe that the principal consents to the agent acting on the principal's behalf. Fergus, 79 N.E.3d at 425.

Syed argues that the Agency Liability claim should be dismissed because the allegations are specious and lack any factual support.[10] The Court disagrees. In this case, Plaintiff has alleged that Defendants "have attempted to claim that they are not responsible" for the "illegal telemarketing and claim that the Call Centers are operated by an independent contractor." [Doc. 71, p. 8]. To counter these claims by Defendants, Plaintiff alleged that Syed was directly involved in the

---

[10] Tele Circuit Network Corporation did not move for dismissal as to this count.

17

hiring of the Call Center employees and posted various advertisements seeking to hire these employees. Plaintiff also alleged that Defendants controlled all the activities of the Call Center employees.

This Court finds that Plaintiff has pled enough facts to show that an agency relationship existed between the Call Center employees and Defendants and that the employees acted on behalf of and for the benefit of Defendants. Because Plaintiff has pled sufficient facts to support a claim for agency liability, Syed's motion is **DENIED** to the extent that he seeks dismissal of the Agency Liability claim.

## CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss [Docs. 72 and 73] are **GRANTED IN PART AND DENIED IN PART**.

The Court believes that this case could benefit from mediation. The parties are ordered to mediate no later than October 25, 2024. The parties are reminded that the Court can refer this case to mediation before a Magistrate Judge at no cost. If the parties would like such a referral, they may make such a request via a motion filed with this Court in the next two weeks.

In light of the pending mediation, the Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case for docket management purposes. Administrative closure will not prejudice the rights of the parties to this litigation

in any manner nor preclude the filing of documents.  If settlement negotiations fail, the parties need only file a motion to reopen the case.  The parties shall file a status report regarding the outcome of mediation no later than five days after mediation is completed.  If mediation is unsuccessful, the parties shall also present proposals as to how they would like the case to proceed.

    **SO ORDERED** this 26th day of August, 2024.

                                                   J. P. BOULEE
                                                   United States District Judge